No. 21175.

Leo P. Doyle and Agnes M. Doyle *v.* Howard S. McBee, Virginia L. McBee, LeRoy S. Larson, Viola L. Larson and South Arapahoe Sanitation District, a Colorado Corporation.

(420 P.2d 247)

Decided November 21, 1966.

GILBERT L. McDONOUGH, SAMUEL J. EATON, for plaintiffs in error.

DAVID BERGER, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

PLAINTIFFS in error will be referred to as the Doyles, and defendants in error as the McBees, the Larsons, or the district.

The Doyles brought the action against the McBees, the Larsons, and the district, asserting three claims: one for rescission of a contract for the purchase of property; one for damages flowing from a breach of covenant of seisin; and a third claim against the district for damages allegedly sustained because of the failure of the district to place of record the instrument by which it acquired an easement over the property described in the contract for the purchase of real estate.

█ Upon being required to elect as between the claim for rescission of the contract and that based upon the alleged breach of covenant, the Doyles relied upon the claims for damages. In requiring this election we hold that the trial court ruled properly and we accordingly give no further consideration to the claim for rescission.

The property involved in this dispute consists of Lots 15, 16 and 17, Block 1, Carroll Addition in Arapahoe county. The Doyles acquired their title through a warranty deed executed by the McBees, and this deed contains, *inter alia,* the following:

"And the said parties of the first part, for themselves, their heirs, executors and administrators do covenant, grant, bargain and agree to and with the said parties of the second part, their heirs and assigns, that at the time of the ensealing and delivery of these presents they are well seized of the premises above conveyed, as of good

sure, perfect, absolute and indefeasible estate of inheritance, in law, in fee simple, and have good right, full power and lawful authority to grant, bargain, sell and convey the same in manner and form aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and incumbrances of whatever kind or nature soever * * *."

The McBees acquired their title from the Larsons who had granted an easement of a right-of-way for a sanitary sewer line across the south twenty feet of Lot 17. The deed creating this easement contained the following:

"The right and easement hereby granted shall include the right to the necessary use of the surface of said land for the construction, laying, maintenance, removal, repair and replacement of said line, and shall include the right to construct and maintain manholes along said line where desired by second party, and the right of abutting and adjoining owners to use this easement hereby granted to construct, connect and maintain house drains to said sewer line."

At the time the Doyles purchased the property, the deed creating the above-mentioned easement had not been placed of record. The district filed an answer in which it denied that the Doyles had no notice of their easement, and denied that plaintiffs purchased the property free and clear of the burden thereof. Affirmatively, the district alleged that the Doyles had purchased the real estate "with knowledge, actual, constructive or implied notice of the easement." The McBees by answer alleged that the Doyles had actual notice of the existence of the easement through conversations which took place prior to the consummation of the sale, and by personal inspection of the premises. The Larsons by answer admitted that they gave a deed to McBees which did not except from the warranties therein contained the easement, which they had granted to the district, and generally denied any liability to the Doyles.

Trial was had to the court. At the conclusion of the

trial, findings of fact, conclusions of law, judgment and decree were entered, wherein it was adjudged in substance that the Larsons had created the easement on April 26, 1961; that the district had installed a sewer trunk line across the right-of-way which was in full operation at the time the Doyles purchased the property; and that the Larsons had deeded the property to the McBees who had thereafter deeded the same to the Doyles. Neither of these deeds made mention of the existence of the easement.

The findings additionally provided the following:

"6. The court finds that the subject property was at all times pertinent to the above transactions improved with motel units and accessory buildings and was used for the operation of a motel business. The purchase of the subject property by plaintiffs included not only the land and improvements but also the furniture and furnishings contained in the improvements used in the operation of the motel business.

"7. The court finds that plaintiffs were at the time of their purchase of the subject property the owners and operators of another motel property and business located immediately adjacent to and south of the subject property. Although plaintiffs testified they intended to use that portion of Lot 17 encumbered by the easement for the purpose of erecting a building both above and below the ground, to serve both motel properties, they did not at any time communicate such purpose or intention to defendants McBee or to any third persons prior to the purchase of the subject property or at the time of the closing of the transaction.

"8. The court specifically finds that although the warranty deed from defendants McBee to plaintiffs Doyle did not except the easement from its operation, said plaintiffs in fact had actual notice of the easement at the time of the transaction and closed the sale with such notice. The court incorporates as a part of its findings

in this respect the comments of the court at the conclusion of the trial.

"9. The court further finds that plaintiffs failed to establish by sufficient, proper and satisfactory evidence damages to which they claim to be entitled resulting from the failure to include in said warranty deed the exception concerning the easement in favor of defendant sanitation district.

## "CONCLUSIONS OF LAW

"1. Plaintiffs having elected to stand upon the second claim for relief rather than the first claim for relief in the nature of rescission, said first claim for relief ought to be dismissed.

"2. The court concludes as a matter of law that plaintiffs' second claim for relief is a claim based upon breach of warranty against encumbrances and that plaintiffs have established a breach of such warranty against encumbrances even though they had actual knowledge of the easement in favor of defendant sanitation district, the essence of said action being in the nature of contract. Plaintiffs are therefore entitled to such damages as have been established by the evidence. Inasmuch as plaintiffs have failed to establish by satisfactory evidence actual damages sustained by them by reason of said breach of warranty against encumbrances, plaintiffs are entitled only to nominal damages.

"3. The court concludes as a matter of law that plaintiffs have failed to establish any right to relief under their third claim for relief against defendant sanitation district, said plaintiffs having had actual knowledge of the encumbrance of said easement on the title of the subject property and pursuant to C.R.S. 1953, 118-6-9, plaintiffs took title subject to the encumbrance in favor of defendant South Arapahoe Sanitation District.

"It is therefore ORDERED, ADJUDGED AND DECREED:

"1. Plaintiffs' first claim for relief be and the same is hereby dismissed.

"2. Plaintiffs shall have judgment against defendants on their second claim for relief and are hereby awarded nominal damages in the sum of $1.00 against each of said defendants McBee and Larson, together with costs in said claim expended to be taxed herein.

"3. Plaintiffs' third claim for relief be and the same is hereby dismissed. Defendant South Arapahoe Sanitation District shall have judgment against plaintiffs for its costs in said claim expended to be taxed herein."

 The only evidence offered by the Doyles concerning the amount of damages allegedly sustained by them was that supplied by Mr. Doyle who testified as follows:

"Q. You have alleged in your complaint that you have been damaged, you and Mrs. Doyle, by reason of the limitation of the estate granted to you. In what amount, what figure in dollars and cents, can you say that you have been damaged?

"A. Well, in dividing the property I believe it would be four-fifteenths.

"Q. Four-fifteenths of the purchase price?

"A. Of the purchase price, approximately $13,000.00.

"Q. And that is based upon your statement that you can not use that property, is that correct?

"A. Yes."

He computed the total square feet within the three lots purchased by him and deducted therefrom the number of square feet contained within the land subjected to the easement. This area, he said, was 4/15ths of the total within the three lots. He claimed 4/15ths of the total purchase price named in his contract of purchase notwithstanding that all improvements were erected upon lots outside the easement area, and that the contract called for the purchase of all personal property and furnishings located within the several apartments of the motel. No evidence was offered tending in any way to separate the value of personalty from the realty. We hold that the 4/15ths measure of damages insisted upon by counsel for the Doyles was an erroneous con-

cept. The applicable rule of law is properly stated in 14 Am. Jur. *Covenants, Conditions and Restrictions* § 186, as follows:

"EASEMENTS. Where an encumbrance is a servitude or easement which cannot be removed at the option of either the grantor or grantee, damages will be awarded for the injury proximately caused by the existence and continuance of the encumbrance, the measure of which is deemed to be the difference between the value of the land as it would be without the easement and its value as it is with the easement. This is the rule applicable where the covenant against encumbrances is broken by the existence, at the time of the execution of the deed, of a continuing right of way over the land granted, in favor of a third person, which materially affects the value of the land. A restriction as to the use to which land may be appropriated or as to the nature, character, or value of buildings which may be erected thereon constitutes an encumbrance within the terms of a covenant against encumbrances, entitling the covenantee to recover substantial damages, which are generally to be based upon the impairment of the market value of the land by reason of the existence of the restriction. The damages are such as naturally and proximately result from the existence and continuance of the restriction. In order to recover more than nominal damages, the burden is upon the plaintiff to show that the existence of the restriction has inflicted upon him an actual loss." Stated more succinctly, the rule is again set forth in 14 Am. Jur. 581, as follows:

"OUTSTANDING EASEMENTS. The measure of damages where there is no failure of title, the fee remaining in the grantee, but where part of the land is subject to an easement that cannot be satisfied by the payment of money, is the depreciation of the land from this cause. Expressed differently, the measure of damages in such case is the difference in the value of the land with and without the easement."

■ The trial court, during the trial, indicated that the foregoing rule was applicable to the instant controversy, subject to the Colorado rule that the agreed purchase price for the real estate controls the value of the land free of the easement. The decrease in value (as of the date of the sale) brought about by the existence of the easement would be the sum to which the Doyles would be entitled as damages. They offered no testimony tending in any manner to establish damage under this applicable rule. Their attorneys strenuously objected to the attempt made by counsel for some of the defendants to present evidence bearing upon this true measure of damages. Defendants' counsel, after much debate, withdrew his expert witness with the comment that under the circumstances if he went forward with further evidence on the subject it would put the defendants "in the position of proving plaintiffs' case, which we object to." Under such circumstances, the burden of proof being upon the Doyles, the trial court correctly awarded nominal damages only. The general rule in this connection is aptly discussed in *Rockhill Iron & Coal Co. v. City of Taunton*, 273 Fed. 96. Accordingly, we hold that in an action for breach of contract, only nominal damages can be recovered, if there is no evidence produced from which the facts necessary to determine the damages under the proper rule can be determined.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE FRANTZ concur.